CAMPBELL and others *v.* CAMPBELL.

*(Circuit Court, D. Connecticut.    July 29, 1881.)*

1. EVIDENCE—BURDEN OF PROOF.

   The burden of proof is on him who charges a trustee with surcharging and falsifying his accounts.

2. TRUST FUNDS—BREACH OF TRUST.

   A trustee cannot use trust funds for his own profit.

3. SAME—SAME.

   A trustee purchased bonds with trust funds, turned them over to the trust estate at an enhanced price, and treated the difference as his individual profit. *Held,* that the investment must be regarded as the estate's from the time of the purchase.

Exceptions to Master's Report.

SHIPMAN, D. J.    The first exception of the defendant to the master's report is allowed, on the ground that there was not, in my opinion, sufficient affirmative evidence that the defendant received $125 for the store fixtures.    The second exception of the defendant to the master's report is allowed in part, to-wit, to the extent of $30, and interest thereon.    As to the remaining $35 this exception is not allowed.    The third, fourth, fifth, sixth, seventh, eighth, and ninth exceptions of the defendant to the master's report are disallowed. With the exception of the first, and $30 and interest on the second, item contained in the master's report, and the corresponding corrections to be made in the computations of interest and in the addition of figures, the master's report is confirmed.    The ground of all the exceptions is substantially the same, viz.: that the master erred in this, that he mistook upon whom lay the burden of proof of the items attempted by the plaintiff to be surcharged and falsified in the account of November 17, 1871, and was of opinion that the defendant was bound affirmatively to account for all moneys belonging to the estate which came into his hands; whereas the master should have held and been of opinion that the plaintiffs were bound to prove, by sufficient affirmative evidence, the facts alleged in their bill, and to show affirmatively that the alleged alterations should be made.

I am of opinion that the idea of the defendant in regard to the master's action is incorrect, and that the defendant's and the master's theory in regard to the burden of proof was the same; and that, in any event, the plaintiff affirmatively proved, and the defendant did not disprove, the facts found by the master in regard to each of the items except the first and second.

It will be sufficient to state the facts in regard to the two principal items, viz., the Rock Island bonds and the Peninsula bonds.

*The Rock Island bonds:*

The plaintiffs clearly showed the various amounts of money which belonged to the trust fund, and which went into the hands of the defendant in 1858, 1859, and 1860. This money the defendant invested, either for himself or for the estate. It was incumbent upon the plaintiffs also affirmatively to prove their allegations in the bill that a portion of this money was invested in five Rock Island bonds. Circumstances, not strong when viewed singly and disconnected from their fellows, but significant when viewed in connection with each other and with the admitted facts, show that the defendant did make such an investment. Two of these bonds were omitted in the original account. It was manifest that the defendant had received money of the trust estate which it was his duty to invest for its benefit, and which it had not received. The question, in what, if anything, was it invested? was not so easy of solution. From the nature of the case, the allegations of the plaintiffs must be proved, if proved at all, by separate circumstances, which, when placed together, should be strong enough to support the plaintiff's theory. This affirmative proof I think they have furnished.

*The Peninsula bonds:*

The affirmative proof, that the money of the estate was knowingly used to pay for these bonds at 80 per cent., while they were turned over to the estate at enhanced prices, is so strong that it cannot successfully be resisted. The defendant was not employing his own but the estate's money in this investment. His idea, at the time of the purchase, in regard to the ownership of the bonds, cannot be exactly ascertained. Probably it was to call them the estate's, if they advanced in price, and his own, if they went down. However this may be, when he finally determined to treat them as the estate's property, it was his duty to account for them at the price which the estate had paid, and not at an enhanced price. He could not use the estate's money in the purchase of bonds, treat the coupons as his own, and then profess to resell the bonds to the estate at a large profit. The investment should be regarded as the estate's from the time of the purchase.

It cannot be denied that the silence of the defendant, in the face of facts which were very significant, has made the task of the master and the court, in weighing testimony, more easy than it otherwise would have been, for there has been no rebutting testimony. One

would naturally suppose that, in view of evidence which could not but be considered as damaging, the defendant would have made such statements and explanations as might tend to satisfy a trier that the inferences which were sought to be drawn from the evidence were unfounded. He made, however, but little explanation; and, when his case was known to be in danger, he apparently furnished his able and ingenious counsel with no theory which they could press upon the attention of the court.

There should be a final decree in accordance with the findings of the master as modified in this opinion.